

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
September 23, 2021 04:25 PM
      AFTAB PUREVAL
     Clerk of Courts
   Hamilton County, Ohio
   CONFIRMATION 1112454
```

**FIRST FINANCIAL BANK**            **A 2103339**

vs.

**FOX CAPITAL GROUP INC**

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH NO JURY DEMAND

## PAGES FILED: 243



VERIFY RECORD

EFR200

EXHIBIT A

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | |
|---|---|
| **FIRST FINANCIAL BANK** <br> 255 East Fifth Street, Suite 700 <br> Cincinnati, OH 45202 <br><br>        **Plaintiff,** <br><br> v. <br><br> **FOX CAPITAL GROUP INC.** <br> d/b/a Fox Business <br> 1920 E. Hallandale Beach Blvd., Ste. 505 <br> Hallandale Beach, FL 33009 <br><br>      <u>Serve Also:</u> <br>      **FOX CAPITAL GROUP INC.** <br>      c/o Korn & Kalish LLP, Registered Agent <br>      5150 Tamiami Trail North, Suite 302 <br>      Naples, FL 34103 <br><br> **Defendant.** | Case No. _____ <br><br> Judge _____ <br><br><br><br> **COMPLAINT** |

Now comes Plaintiff First Financial Bank ("Plaintiff"), by and through counsel, and for its Complaint against Defendant Fox Capital Group Inc. d/b/a Fox Business ("Defendant"), states and avers as follows:

## **PARTIES**

1. Plaintiff is an Ohio banking corporation with a principal place of business at 255 East Fifth Street, Suite 700, Cincinnati, Ohio 45202, and is the successor by merger to MainSource Bank. Attached hereto as <u>Exhibit A</u> is a true and accurate copy of the Certificate of Merger filed with the Ohio Secretary of State on March 28, 2018 which evidences the merger of MainSource Bank into First Financial Bank.

1

2. Upon information and belief, Defendant is a Florida corporation with its principal place of business in Hallandale, Florida.

## BACKGROUND

### The Shining Knight Obligations

3. Plaintiff is in possession of and entitled to enforce the following loan obligations from Shining Knight Realty, LLC ("Shining Knight"): (1) a Term Note dated January 26, 2018, executed by Shining Knight and made payable to MainSource Bank in the principal amount of $12,557,000.00 (the "Shining Knight Note") and a related Loan Agreement of even date therewith (the "Shining Knight Loan Agreement") and (2) an ISDA Master Agreement concerning an interest rate swap (the "Swap Agreement"). True and accurate copies of the Shining Knight Note, Shining Knight Loan Agreement and Swap Agreement are attached hereto as <u>Exhibits B, C and D, respectively</u>.

4. Shining Knight is also obligated to Plaintiff on a certain Guaranty dated January 26, 2018 (the "Shining Knight Guaranty") pursuant to which it guaranteed the full and prompt payment of all obligations owed by the Wexford Companies (defined below) to MainSource Bank. A true and accurate copy of the Shining Knight Guaranty is attached hereto as <u>Exhibit E</u>.

5. As security for the repayment of any and all of Shining Knight's obligations owed to MainSource Bank, including the obligations under the Shining Knight Note, Swap Agreement and Shining Knight Guaranty, Shining Knight executed and delivered to MainSource Bank an Open-End Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing dated January 26, 2018 and filed for record with the Hamilton County Recorder's Office on January 26, 2018 at O.R. Book 13592, Page 1502 (together with all amendments and modifications

thereof, the "Mortgage"). True and accurate copies of the Mortgage and the subsequent amendment thereof are attached hereto as Exhibits F and G.

6. In addition to the real estate described in the Mortgage, the Mortgage granted Plaintiff a first-priority security interest in the following (the "Shining Knight Collateral"):

> **1.1.7** all moneys, credits and other property of any nature whatsoever of Mortgagor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Mortgagor individually or jointly with another) Mortgagee or any affiliate of Mortgagee, including but not limited to cash collateral accounts, construction disbursement accounts and reserve accounts (but excluding fiduciary accounts, if any);

7. Plaintiff's security interest in the Shining Knight Collateral is perfected by virtue of (i) a UCC Financing Statement filed with the Ohio Secretary of State on January 26, 2018 at OH00218401739, and (ii) Plaintiff's having control of Shining Knight's deposit accounts by virtue of its status as the depositary bank where said accounts were maintained. A true and accurate copy of the UCC is attached hereto as Exhibit H.

8. Plaintiff is the holder of and entitled to enforce the Shining Knight Note, Shining Knight Loan Agreement, Swap Agreement, Shining Knight Guaranty and Mortgage as the successor by merger to MainSource Bank. *See* Exhibit A attached hereto.

## The Wexford Companies' Obligations

9. Plaintiff is in possession of and entitled to enforce a Term Note dated August 5, 2019, executed by The Wexford Place, Inc. ("Wexford Place") and Wexford Care Center, Inc. ("Wexford Care" and together with Wexford Place, the "Wexford Companies"), jointly and severally, and made payable to Plaintiff in the original principal amount of $637,945.00 (the "Wexford Note"). A true and accurate copy of the Wexford Note is attached hereto as Exhibit I.

10. The Wexford Note was executed in connection with and is governed by the terms of a Loan Agreement dated January 26, 2018, as amended by an Amendment to Loan Agreement

with an effective date of November 6, 2018, and a Second Amendment to Loan Agreement with an effective date of August 5, 2019 (collectively, the "Wexford Loan Agreement"). True and accurate copies of the Wexford Loan Agreement and amendments thereto are attached hereto as Exhibits J, K and L, respectively.

11. The Wexford Companies are also obligated to Plaintiff on a certain Guaranty dated January 26, 2018 (the "Wexford Guaranty") pursuant to which they jointly and severally guaranteed the full and prompt payment of all obligations owed by Shining Knight to MainSource Bank, including, but not limited to, the Shining Knight Note and Swap Agreement described above. A true and accurate copy of the Wexford Guaranty is attached hereto as Exhibit M.

12. As security for the repayment of any and all obligations of the Wexford Companies owed to Plaintiff, including the obligations under the Wexford Note and Wexford Guaranty, the Wexford Companies executed and delivered to MainSource Bank a Security Agreement dated January 26, 2018 (the "Security Agreement"). A true and accurate copy of the Security Agreement is attached hereto as Exhibit N.

13. The Security Agreement granted Plaintiff a first-priority security interest in all business assets of the Wexford Companies, including, but not limited to, all accounts receivable, deposit accounts, cash proceeds, documents, and general intangibles, whether then existing or thereafter acquired, and all proceeds and products thereof (collectively, the "Wexford Collateral").

14. Plaintiff's security interest in the Wexford Collateral is perfected by virtue of (i) a UCC-1 Financing Statement against Wexford Place filed with the Ohio Secretary of State on January 26, 2018 at File No. OH00218404210, (ii) a UCC-1 Financing Statement against Wexford Care filed with the Ohio Secretary of State on January 26, 2018 at File No. OH00218404543, and (iii) Plaintiff's having control of the Wexford Companies' deposit accounts by virtue of its status

as the depositary bank where said accounts were maintained. True and accurate copies of the UCC filings are attached hereto as <u>Exhibits O and P</u>.

15. Plaintiff is the holder of and entitled to enforce the Wexford Guaranty and Security Agreement as the successor by merger to MainSource Bank. *See* <u>Exhibit A</u> attached hereto.

### The Defaults Under the Obligations

16. Shining Knight and the Wexford Companies (collectively, the "Obligors") are in default of their respective obligations under the Shining Knight Note, Shining Knight Loan Agreement, Swap Agreement, Shining Knight Guaranty, Wexford Note, Wexford Loan Agreement and Wexford Guaranty (collectively, the "Obligations") as a result of, among other things, Obligors' defaults under certain loans owed to other financial institutions, the entry of numerous judgments against the Obligors, and Obligors' involvement in an elaborate check kiting scheme involving their bank accounts at First Financial Bank.

17. As a result of the foregoing defaults, Plaintiff filed suit against the Obligors, among others, on June 12, 2020 to collect the sums due under the Obligations and exercise Plaintiff's rights with respect to the Shining Knight Collateral and Wexford Collateral (collectively, the "Collateral") securing the Obligations. That litigation remains pending in the Hamilton County Court of Common Pleas.

18. To date, Plaintiff is owed in excess of $4,000,000.00 on the Obligations. This amount is an approximation only, and is subject to change based upon various factors, including the multiple lawsuits pending against the Obligors, and fluctuations in market conditions which may affect the balance due under the Swap Agreement.

### Defendant's Possession and Control of Plaintiff's Collateral

19. As set forth above, Plaintiff has a perfected first-priority security interest in, among

other things, the Obligors' accounts receivable and all proceeds thereof (the "Receivables").

20. The Security Agreement, Loan Agreements and Mortgage each expressly prohibit the Obligors from selling, pledging, encumbering or otherwise disposing of any Collateral without the prior written consent of Plaintiff.

21. Notwithstanding that prohibition, Plaintiff has discovered that some or all of the Obligors entered into one or more factoring and/or merchant cash advance agreements with Defendant pursuant to which they sold and/or pledged certain of their Receivables to Defendant (the "Factoring Agreements").

22. Upon information and belief, during the period of November, 2019 through May, 2020, Defendant collected approximately $588,463.00 from Obligors on account of the Receivables purchased by Defendant.

23. The Receivables are, and at all times relevant have been, Collateral subject to Plaintiff's perfected first-priority security interest.

24. Plaintiff has never consented to or otherwise approved of the Factoring Agreements or the sale and/or transfer of the Receivables to Defendant.

25. To date, despite demand by Plaintiff, Defendant has failed to return the sums that it wrongfully collected under the Factoring Agreements.

### COUNT ONE
### (Conversion)

26. Plaintiff incorporates the statements and allegations contained above as if fully rewritten herein.

27. Pursuant to the Security Agreement and Mortgage, Plaintiff has a first-priority security interest in the Receivables and all proceeds and products thereof, including the sums collected by Defendant under the Factoring Agreements.

28. At all times relevant herein, Plaintiff has been entitled to immediate possession of all such Receivables collected by and/or transferred to Defendant in connection with the Factoring Agreements.

29. Defendant had actual or constructive knowledge that Plaintiff had a perfected first-priority security interest in the Receivables by virtue of, among other things, Plaintiff's UCC Filings on record with the Ohio Secretary of State.

30. Notwithstanding that knowledge, Defendant proceeded to collect a total of approximately $588,463.00 on account of the Receivables purchased from Obligors, which Receivables are Collateral subject to Plaintiff's first-priority security interest.

31. Upon discovering Obligors' unauthorized sale and transfer of the Receivables to Defendant, Plaintiff made a formal demand to Defendant to return all sums they collected from the Receivables in contravention of Plaintiff's lien. A true and accurate copy of the demand sent to Defendant is attached hereto as Exhibit Q.

32. To date, Defendant has failed and/or refused to return the sums they collected from the Receivables, and, in so doing, has wrongfully exercised dominion and/or control over Plaintiff's Collateral in derogation of Plaintiff's rights as the holder of a perfected first-priority security interest in the Collateral.

33. As a result of the foregoing, Plaintiff has been damaged in an amount equal to the full extent of Plaintiff's Collateral which has been wrongfully collected and retained by Defendant, the exact amount of which is to be determined at trial, but which is estimated to be no less than $588,463.00.

WHEREFORE, Plaintiff First Financial Bank prays for judgment in its favor as follows:

A. Possession and delivery of the Collateral in possession of the Defendant;

    B.    Money damages for the value of the Collateral converted by Defendant in an amount to be determined at trial, but estimated to be no less than $588,463.00, plus pre-judgment interest accruing from the date of conversion, plus the costs and expenses, including attorney fees, incurred by Plaintiff in recovering the Collateral converted by Defendant, and the costs of this action; and

    C.    For such other and further relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Susan M. Argo*
Susan M. Argo (0067281)
Jeffrey M. Hendricks (0066889)
*Attorneys for First Financial Bank*
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 629-2716
Fax:   (513) 651-3836
Email: sargo@graydon.law
       jhendricks@graydon.law