UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

First Financial Bank,

    Plaintiff,

        v.                                                    Case No. 1:21cv691

Fox Capital Group, Inc.,                      Judge Michael R. Barrett

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant Fox Capital Group, Inc.'s Motion to Dismiss Plaintiff's Complaint. (Doc. 5). Plaintiff First Financial Bank has filed a Response in Opposition (Doc. 6); and Defendant has filed a Reply (Doc. 8).

**I.    BACKGROUND**

Plaintiff First Financial Bank is an Ohio banking corporation with a principal place of business in Cincinnati, Ohio. (Doc. 2, PAGEID 256). Defendant Fox Capital Group, Inc. is a Florida corporation with its principal place of business in Hallandale, Florida. (Id., PAGEID 257). In 2018, Plaintiff entered into a series of agreements with Shining Knight Realty which created loan obligations on the part of Shining Knight ("Loan Agreements"). (Id.) As part of the security for the obligations, Shining Knight signed a mortgage agreement ("Mortgage"). (Id., PAGEID 257-58). The Mortgage granted Plaintiff a first-priority security interest in the following:

> 1.1.7 all moneys, credits and other property of any nature whatsoever of Mortgagor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Mortgagor individually or jointly with another) Mortgagee or any affiliate of Mortgagee, including but not limited to cash collateral accounts, construction disbursement accounts and reserve accounts (but excluding fiduciary

accounts, if any) . . .

(Id., PAGEID 258) (referred to hereinafter as "Collateral"). Because it is the depository bank where the accounts are maintained, Plaintiff has control of Shining Knight's deposit accounts. (Id.) Plaintiff filed a Uniform Commercial Code ("U.C.C.") Financing Statement with the Ohio Secretary of State to perfect its security interest in the Collateral. (Id.)

Plaintiff also entered into a series of agreements with The Wexford Place, Inc. and Wexford Care Center, Inc., including a Guaranty, pursuant to which the companies jointly and severally guaranteed the full and prompt payment of all obligations owed by Shining Knight. (Doc. 2, PAGEID 259). As security, Plaintiff and the Wexford Companies entered into a security agreement dated January 26, 2018 ("Security Agreement") which granted Plaintiff a first-priority security interest in all business assets of the Wexford Companies, including, but not limited to, all accounts receivable, deposit accounts, cash proceeds, documents, and general intangibles, whether then existing or thereafter acquired, and all proceeds and products thereof (also referred to hereinafter as "Collateral"). (Id.) Because it is the depositary bank where the accounts are maintained, Plaintiff has control of the Wexford Company's deposit accounts. (Id.) Plaintiff filed a U.C.C. Financing Statement with the Ohio Secretary of State to perfect its security interest in the Collateral. (Id.)

Shining Knight and the Wexford Companies are now in default on these obligations. (Id., PAGEID 260). Plaintiff is owed approximately $4 million on the obligations. (Id.) Plaintiff has filed suit against Shining Knight and the Wexford Companies in Hamilton County Court of Common Pleas in order to collect on the sums due. (Id.)

Plaintiff discovered that Shining Knight and the Wexford Companies entered into

2

factoring agreements with Defendant. (Id., PAGEID 261). As part of these factoring agreements, Shining Knight and the Wexford Companies sold or pledged certain of their accounts receivables and all proceeds thereof ("Receivables") to Defendant without the consent of Plaintiff. (Id.) The Security Agreement, Loan Agreements and Mortgage expressly prohibited Shining Knight and the Wexford Companies from selling, pledging, encumbering or otherwise disposing of any Collateral without the prior written consent of Plaintiff. (Id.) Despite this prohibition, Plaintiff believes that between November of 2019 and May 2020, Defendant collected approximately $588,463.00 in Receivables from Shining Knight and the Wexford Companies. (Id.) Plaintiff claims that the Receivables are Collateral subject to Plaintiff's perfected first-priority security interest. (Id.) Plaintiff has made a formal demand to Defendant for the return of the sums collected, but Defendant has failed to do so. (Id.)

In its Complaint, Plaintiff brings a claim of conversion under Ohio law for the return of the sums collected by Defendant. In their Motion to Dismiss, Defendant maintains that Plaintiff fails to state a claim for conversion because there is no conversion where the subject of the claim is money or funds transferred from a deposit account.

II. **ANALYSIS**

    A. **Standard of Review**

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal

Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### B. Conversion

Under Ohio law, the elements of a conversion claim are: "1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (citing *Haul Transport of VA, Inc. v. Morgan*, Slip Op. No. CA 14859, Montgomery Cty., 1995 WL 328995 (Ohio App.1995); *Fayette Inv. Corp. v. Jack Johnson Chevrolet Co.*, 119 Ohio App. 111, 197 N.E.2d 373 (1963)).

Defendant first argues that the transfers of money cannot form the basis of a conversion claim. However, as this Court has explained, "a security interest in proceeds qualifies as a perfected security interest if the security interest in the original collateral was perfected." *Fifth Third Bank (Cent. Ohio) v. Avnet, Inc.*, No. 2:04-CV-00538, 2005 WL 8161571, at *5 (S.D. Ohio Oct. 6, 2005) (citing Ohio Rev. Code § 1309.315(A)(1) ("A

4

security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien . . .")).

Next, Defendant argues that any money transferred to Defendant was transferred from deposit accounts free and clear of any security interests of Plaintiff.[1] Defendant relies on Ohio Revised Code § 1309.332(A) and (B), which provide:

> (A) A transferee of money takes the money free of a security interest unless the transferee acts in collusion with the debtor in violating the rights of the secured party.
>
> (B) A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

Ohio Rev. Code § 1309.332 (U.C.C. § 9-332 as adopted in Ohio).

Plaintiff responds that the conversion took place when the accounts receivable were sold, so that the actual transfers do not form the basis of the claim and Ohio Revised Code § 1309.332 is inapplicable. Plaintiff maintains that its security interest in the Accounts Receivable and its proceeds remains enforceable against Defendant.

During the period of time in which the parties were briefing Defendant's Motion to Dismiss, Ohio's Eleventh District Court of Appeals decided the same issue now presented to this Court. *See Cortland Sav. & Banking Co. v. Platinum Rapid Funding Grp., Ltd.*, 182 N.E.3d 1259, 1264, (Ohio Ct. App. 2021).

In *Cortland Bank*, the plaintiff was a community bank which entered into a commercial security agreement with 21st Century Concrete Construction ("21st Century"). 182 N.E.2d at 1260. Under the security agreement, Cortland Bank was

---

[1] For purposes of deciding the Motion to Dismiss, Defendant does not dispute that Plaintiff holds a perfected security interest in the Collateral. (See Doc. 5, PAGEID 740, n.4).

5

granted a security interest in assets owned by 21st Century, including a deposit account maintained by Cortland Bank. *Id*. at 1260-61. The defendant, Platinum Rapid Funding Group ("Platinum"), entered into three merchant agreements with 21st Century, whereby Platinum agreed to make two advances of $250,000 and one advance of $846,000 to 21st Century in exchange for a percentage of 21st Century's future receivables in the total amount of $1,526,000. *Id*. at 1261. 21st Century authorized Platinum to withdraw weekly payments from the deposit account maintained at Cortland Bank. *Id.* From March 2018 to March 2019, $869,250 was transferred from the checking account to Platinum. *Id*. 21st Century later defaulted on its loan with Cortland Bank. *Id*. Cortland Bank brought claims against Platinum for conversion, unjust enrichment, impairment of a security interest, and tortious interference with contract. *Id*.

As in this case before the Court now, the parties in *Cortland Bank* disputed the applicability of Ohio Revised Code § 1309.332. *Id*. at 1262. The Eleventh District found that the issue was one of statutory construction, and in reaching its decision, rejected a federal court's decision in *In re Tusa-Expo Holdings, Inc. v. Knoll, Inc*., 811 F.3d 786, 798 (5th Cir. 2016) which interpreted Texas' adoption of this U.C.C. provision (and identical to that adopted in Ohio). *Id*. at 1263. After reviewing the definitions of "deposit account" and "account under Article 9 of the U.C.C., the Eleventh District determined:

> for purposes of Article 9, a deposit account is by statutory definition a right to payment from a bank of the money that was deposited by the customer. Pursuant to this definition, the deposit of funds in an account is the equivalent of exchanging the funds for a promise to pay. Therefore, we disagree with *In re Tusa-Expo* insofar as the court based its decision on the premise that a deposit account contains funds. Instead, the funds are transformed to a right to payment, *i.e.* the deposit account, to which the security interest attaches. However, the security interest does not attach from the deposit account to the funds ordered paid, absent collusion, pursuant to R.C. 1309.322(B).

6

*Id*. The Eleventh District noted that this interpretation was consistent with the policy underlying Ohio Revised Code § 1309.332, which relates to the free flow of funds and the high value placed on the finality of payments. *Id*. at 1263-64. Therefore, the Eleventh District concluded:

> we agree that R.C. 1309.332(B) permits Platinum, as the transferee, to take the funds free of Cortland Bank's security interest in the deposit account absent collusion, and that the trial court erred in its determination that a security interest in the funds remained intact. This is the outcome precisely contemplated by Comment 2 to R.C. 1309.332, as illustrated by Example 1 to that Comment:
>
>> **Example 1**: Debtor maintains a deposit account with Bank A. The deposit account is subject to a perfected security interest in favor of Lender. Debtor draws a check on the account, payable to Payee. Inasmuch as the check is not the proceeds of the deposit account (it is an order to pay funds from the deposit account), Lender's security interest in the deposit account does not give rise to a security interest in the check. Payee deposits the check into its own deposit account, and Bank A pays it. Unless Payee acted in collusion with Debtor in violating Lender's rights, Payee takes the funds (the credits running in favor of Payee) free of Lender's security interest. This is true regardless of whether Payee is a holder in due course of the check and even if Payee gave no value for the check.

*Id*. at 1264. However, the Eleventh District noted that "the issue of collusion is now determinative, and this matter is remanded to the trial court to address that issue in the first instance." *Id*.

As the Complaint is currently plead, Plaintiff does not allege that Defendant colluded with Shining Knight and the Wexford Companies to violate Plaintiff's rights in its Collateral.[2] In the absence of collusion, Ohio Revised Code § 1309.332 precludes

---

[2]Plaintiff's allegations in the Complaint are as follows:

29. Defendant had actual or constructive knowledge that Plaintiff had a perfected first priority security interest in the Receivables by virtue of, among other things, Plaintiff's UCC Filings on record with the Ohio Secretary of State.

7

Plaintiff's claim for conversion.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss (Doc. 5) is **GRANTED**. Plaintiff's claim for conversion is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiff to identify any allegations which would constitute collusion, as discussed in the context above. The Court directs Plaintiff First Financial Bank to file any such amended Complaint within **twenty-eight (28) days** of the entry of this Order.

**IT IS SO ORDERED.**

                                                   */s/ Michael R. Barrett*
                                                   Michael R. Barrett
                                                   United States District Judge

---

> 30. Notwithstanding that knowledge, Defendant proceeded to collect a total of approximately $588,463.00 on account of the Receivables purchased from Obligors, which Receivables are Collateral subject to Plaintiff's first-priority security interest.

(Doc. 2, PAGEID 262). With regard to the definition of "collusion," one federal bankruptcy court has explained that the official comment to U.C.C. section 9-332 sheds some light on what is meant by the term "collusion" in this context:

> As the official comments to those provisions explain, collusion involves being complicit in a wrongdoing, and is explicitly compared to aiding and abetting an intentional tort. To be found in collusion, the recipient of the transfer must have "affirmatively engaged in wrongful conduct." U.C.C. § 8–503(e) cmt. 3 (Fla. Stat. § 678.5031). Mere knowledge of the rights of others and that the transferor's act is wrongful is not sufficient to support a claim of collusion. *Id*.; U.C.C. § 8–115 cmt. 5 (Fla. Stat. § 678.1151).

*In re Tuscany Energy, LLC*, 581 B.R. 681, 690 (Bankr. S.D. Fla. 2018).