**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

First Financial Bank,

       Plaintiff,

           v.                             Case No.  1:21cv691

Fox Capital Group, Inc.,                Judge Michael R. Barrett

       Defendant.

## <u>OPINION & ORDER</u>

This matter is before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16), Plaintiff's opposition thereto (Doc. 18), and Defendant's Reply (Doc. 19).

## I.  <u>BACKGROUND</u>

Plaintiff is an Ohio banking corporation. (Doc. 12, ¶ 1). In 2018, Plaintiff entered into a series of agreements with Shining Knight Realty which created loan obligations on the part of Shining Knight ("Loan Agreements"). (Id., ¶ 6). As part of the security for the obligations, Shining Knight signed a mortgage agreement ("Mortgage"). (Id., ¶ 8). The mortgage granted Plaintiff a first-priority security interest in the following:

> 1.1.7 all moneys, credits, and other property of any nature whatsoever of Mortgagor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Mortgagor individually or jointly with another) Mortgagee or any affiliate of Mortgagee, including but not limited to cash collateral accounts, construction disbursement accounts and reserve accounts (but excluding fiduciary accounts, if any) . . .

(Id., ¶ 9) (referred to hereinafter as "Collateral"). Because it is the depository bank where the accounts are maintained, Plaintiff has control of Shining Knight's deposit accounts

(Id., ¶ 10). Plaintiff filed a Uniform Commercial Code ("U.C.C.") Financing Statement with the Ohio Secretary of State to perfect its security interest in the Collateral. (Id.).

Plaintiff also entered into a series of agreements with The Wexford Place, Inc. and Wexford Care Center Inc., including a Guaranty pursuant to which the companies jointly and severally guaranteed the full and prompt payment of all obligations owed by Shining Knight. (Id., ¶ 14). As security, Plaintiff and the Wexford Companies entered into a security agreement dated January 26, 2018 ("Security Agreement"). (Id., ¶ 15). The Security Agreement granted Plaintiff a first-priority security interest in all business assets of the Wexford Companies, including, but not limited to, all accounts receivable, deposit accounts, cash proceeds documents, and general intangibles, whether then existing or thereafter acquired, and all proceeds and products thereof (also referred to hereinafter as "Collateral"). (Id., ¶ 15-16). Plaintiff filed a U.C.C. Financing Statement with the Ohio Secretary of State against the Wexford Companies. (Id., ¶ 17). Plaintiff also has control over the Wexford Companies' deposit accounts. (Id.)

Shining Knight and the Wexford Companies (collectively, the "Obligors") are now in default on these obligations. (Id., ¶ 19). Plaintiff is owed approximately $3 million on the obligations. (Id., ¶ 21). Plaintiff has filed suit against the Obligors in Hamilton County Court of Common Pleas in order to collect on the sums due. (Id., ¶ 20).

Plaintiff discovered that the Obligors entered into a factoring agreement with Defendant. (Id., ¶ 24). As part of these factoring agreements, the Obligors sold or pledged certain of their accounts receivables and all proceeds thereof ("Receivables") to Defendant without the consent of Plaintiff. (Id., ¶ 23-24). The Security Agreement, Loan Agreements, and Mortgage expressly prohibited the Obligors from selling, pledging,

encumbering, or otherwise disposing of any Collateral without the prior written consent of Plaintiff. (Id., ¶ 23).

Despite this prohibition, Plaintiff believes that between November of 2019 and May 2020, Defendant collected approximately $588,463.00 in Receivables from the Obligors. (Id., ¶ 25).   Plaintiff believes that Defendant and Obligors worked together to usurp Plaintiff's priority interest and Obligors purposely concealed that they sold and/or pledged the Collateral in violation of the Security Agreement, to the detriment of Plaintiff. (Id., ¶ 29-30). Plaintiff believes that Defendant purposefully concealed that they had been granted ownership and/or a security interest in Plaintiff's collateral by failing to file any U.C.C. Financing Statement, thus thwarting Plaintiff's ability to ensure the Collateral was not sold and/or pledged in violation of the Security agreement. (Id., ¶ 31-32).   Plaintiff explains that Obligors violated Section 6 of the Security Agreement when they permitted Defendant to wire funds from deposit accounts controlled by Plaintiff. (Id., ¶ 33). Plaintiff explains that Obligors also violated Sections 4 and 6 of the Security Agreement, as well as Ohio law, by failing to account to Plaintiff for the proceeds of such sale and/or pledge of Collateral. (Id., ¶ 34).

Plaintiff claims that the Receivables are Collateral subject to Plaintiff's perfected first-priority security interest. (Id., ¶ 35). Plaintiff never consented to or approved the Factoring Agreements, or the sale and/or transfer of the Receivables to Defendant. (Id., ¶ 36). Plaintiff has made a formal demand to Defendant for the return of the sums collected, but Defendant has failed to do so. (Id., ¶ 27).

The Court dismissed Plaintiff's original complaint (Doc. 2) without prejudice to allow Plaintiff to identify any allegations which would constitute collusion.  (Doc. 10). The

Amended Complaint (Doc. 12) added paragraphs 26-34. These paragraphs further describe the relationship between Defendant and Obligors, which was missing from the original complaint. The Amended Complaint also added allegations to Count One (Conversion) that Defendant's company is geared toward financially distressed companies with immediate cash needs; and Defendant operates through a system of brokers and charges large fees at the initial funding to offset the risk of taking on financially distressed companies. (Doc. 2, ¶ 41-42). Paragraph 44 of the amended complaint adds that Plaintiff believes the "purchase price" identified in Defendant's contract with the Obligors is not the purchase price actually paid; and the contracts are purposely misleading to hide the fees that reduce the up-front funding and/or "purchase price." (Id., ¶ 43).

The Amended Complaint also added Count Two (Fraudulent Transfer – Ohio Revised Code § 1336.04). Plaintiff accuses Defendant of making two types of fraudulent transfers.  The first involves actual fraud.  Plaintiff alleges that the sale and/or pledge of the Receivables and/or Withdrawals were made with actual intent to hinder, delay, or defraud Plaintiff. (Id., ¶ 54).  The second involves constructive fraud.  Plaintiff claims that there was not adequate consideration between Obligors and Defendant because Defendant deposited the sum of $17,832.22 with Wexford Care yet withdrew $588,436.26. (Id., ¶ 56).

This matter is now before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 16).  Defendant maintains that Plaintiff's claims for conversion and actual fraudulent transfer do not meet heightened pleading standard required by Federal Rule of Civil Procedure 9(b); and Plaintiff has failed to state a claim for

constructive fraudulent transfer.

## II.  ANALYSIS

### A.  Standard of Review

#### 1.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

#### 2.  Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy Rule 9(b) at the motion to dismiss stage, "the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Smith v. General Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021) (quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th

Cir. 2017) (internal quotation marks omitted)). However, "Rule 9(b)'s special requirements should not be read as a mere formalism, decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008).

### B. Conversion

Defendant argues that because collusion is an element of the conversion claim, Plaintiff must meet the heightened pleading standard required by Rule 9(b). Plaintiff responds that it has not brought a stand-alone claim of collusion, and therefore it only needs to plead sufficient facts to support its claim of conversion.

Under Ohio law, the elements of a conversion claim are: "1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (citing *Haul Transport of VA, Inc. v. Morgan*, Slip Op. No. CA 14859, Montgomery Cty., 1995 WL 328995 (Ohio App. 1995); *Fayette Inv. Corp. v. Jack Johnson Chevrolet Co.*, 119 Ohio App. 111, 197 N.E.2d 373 (1963)).

As this Court explained in its previous Order on Defendant's Motion to Dismiss the original complaint, to properly plead the second element of the conversion claim, Plaintiff must allege that Obligors and Defendant colluded to transfer the funds in question. (See Doc. 10, PAGEID 856-857 (citing *Cortland Sav. & Banking Co. v. Platinum Rapid Funding Grp., Ltd.*, 182 N.E.3d 1259, 1264 (Ohio Ct. App. 2021)). This is because Ohio Revised Code § 1309.332 (U.C.C. §9-332 as adopted in Ohio)) provides:

> (B) A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in *collusion* with the debtor in violating the rights of the secured party

Ohio Revised Code §1309.332(B) (emphasis added). Therefore, absent collusion, Ohio Revised Code § 1309.332(B) permits Defendant, as the transferee, to take the funds free of Plaintiff's security interest in the deposit account.  *Cortland*, 182 N.E.3d at 1264.

The official comment to U.C.C. §9-332 refers to the definitions of collusion found in U.C.C. §§8-115 and 8-503(e).  As one court has explained, under these provisions:

> collusion involves being complicit in a wrongdoing, and is explicitly compared to aiding and abetting an intentional tort.  To be found in collusion, the recipient of the transfer must have "affirmatively engaged in wrongful conduct."  U.C.C. § 8-503(e) cmt. 3 (Fla. Stat. § 678.5031).  Mere knowledge of the rights of others and that the transferor's act is wrongful is not sufficient to support a claim of collusion.  *Id*.; U.C.C. § 8-115 cmt. 5 (Fla. Stat. § 678.1151).

*In re Tuscany Energy, LLC*, 581 B.R. 681, 690 (Bankr. S.D. Fla. 2018).  Within the context of Article 8 of the U.C.C., courts look to section 876 of the Restatement of Torts to analyze whether collusive acts have occurred.  *See Amegy Bank Nat. Ass'n v. DB Priv. Wealth Mortg., Ltd*., No. 2:12-CV-243-FTM-38, 2014 WL 791503, at *7 (M.D. Fla. Feb. 24, 2014); *In re Montagne*, 413 B.R. 148, 160 (Bankr. D. Vt. 2009); *Peoples Bank SB v. Reliable Fast Case LLC*, No. 2:16-CV-399-TLS, 2018 WL 3633961, at *3 (N.D. Ind. July 31, 2018).  According to that provision:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
>
> …
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of

duty to the third person

Restatement (Second) of Torts § 876 (1979).

There is no support for Defendant's argument that the collusion element of Ohio Revised Code § 1309.332 must plead with particularity pursuant to Federal Rule of Civil Procedure 9(b) standards.  The cases cited by Defendant are either addressing collusion as a stand-alone claim or fraud as a claim. (Doc. 16, PAGEID 1389-1390).  The Court finds these cases inapplicable.  *See AAA Installers v. Sears Holdings Corp.*, 764 F. Supp. 2d 931,942 (S.D. Ohio 2011) (where collusion is a claim, collusion is a type of fraud and therefore must be plead under 9(b) standards); *James v. Norfolk S. R. Co.*, No. 3:19-cv-1498, 2020 U.S. Dist. LEXIS 50302 at *6 (N.D. Ohio Mar. 17, 2020) (no mention of 9(b) with regards to collusion, only that plaintiffs "failed to plead essential factual details" for the collusion claim); *Franke v. Norfolk S. Ry. Co.*, 2021 U.S. Dist. LEXIS 159285 at *9 (N.D Ohio Aug. 24, 2021) (fraud claim based on non-specific "information and belief" pleading could not survive a motion to dismiss).

Instead, the Court finds that Plaintiff has properly plead collusion for purposes of Ohio Revised Code § 1309.332.  Under Rule 9, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Plaintiff alleges that Defendant had knowledge, through Plaintiff's UCC-1 financing statements, that Plaintiff had a senior security interest in the account receivables.  (Doc. 12, ¶¶ 10, 17, 28, 44).  Plaintiff claims that Defendant deliberately concealed the Factoring Agreements from Plaintiff and purposefully failed to file any UCC-1 Financing Statements to secure Defendant's security interest in the Collateral. (Doc. 12, ¶¶ 28, 31, 32, 44).  Plaintiff alleges that Defendant had discussions with the Obligors to ensure that Obligors

8

would not inform Plaintiff of the Factoring Agreements.  (Id., ¶ 27). When viewing these facts in the light most favorable to Plaintiff, Plaintiff has sufficiently plead the collusion element required to bring a claim under Ohio Revised Code § 1309.332.  *Accord Amegy Bank, N.A. v. Deutsche Bank, Ag*., No. 4:12-CV-23, 2013 WL 12121328, at *5 (E.D. Tenn. Mar. 29, 2013) (concluding plaintiff pled plausible scenario in which defendants colluded with debtor to dispose of collateral based on allegation that defendants "knew or should have known" that the debtor was using plaintiff's proceeds to pay unrelated debts owed to defendants).  Whether Plaintiff can prove Defendant colluded with the Obligors is "an issue for another day." *Peoples Bank SB v. Reliable Fast Case LLC*, No. 2:16-CV-399-TLS, 2018 WL 3633961, at *4 (N.D. Ind. July 31, 2018) (citing *Smith v. Lake Cty.*, No. 2:15-CV-123, 2017 WL 568590, at *7 (N.D. Ind. Feb. 13, 2017) ("[M]aybe when the record in this case is more developed Buncich will be able to establish that the Plaintiff's claim against him is not sustainable as a matter of law ... [b]ut we are not there yet.")).

### C.    Fraudulent transfer

Defendant argues that the allegations related to Plaintiff's fraudulent transfer claim fail to meet the heightened pleading standard required by Rule 9(b).

Under Ohio's version of the Uniform Fraudulent Transfers Act, a fraudulent transfer claim can be brought if the debtor made a transfer or incurred an obligation with either actual or constructive intent to defraud the creditor.  Plaintiff's amended complaint alleges both an actual intent fraudulent transfer claim under Ohio Revised Code § 1336.04(A)(1) as well as a constructive intent fraudulent transfer claim under Ohio Revised Code §1336.04(A)(2). The Sixth Circuit has held that a claim based on actual intent must be pleaded with particularity under Rule 9(b)).  *Northwestern Nat'l Ins. Co. of Milwaukee,*

9

*Wisc. v. Joslyn*, Nos. 93–4266/93–4295/93–4332, 1995 WL 270995, *3 (6th Cir. May 8, 1995).  However, "[b]ecause Section 1336.04(A)(2) does not require proof of actual fraud, the heightened Rule 9(b) pleading requirements do not apply."  *In re Chambers*, No. 19-10309, 2020 WL 8184302, at *7 (Bankr. S.D. Ohio Sept. 18, 2020) (citing *Van-American Ins. Co. v. Schiappa*, 191 F.R.D. 537, 542-43 (S.D. Ohio 2000) (concluding that the heightened Rule 9(b) requirements do not apply to a constructive fraud claim under Ohio Revised Code Section 1336.04(A)(2) and, as further support, noting that the Ohio Supreme Court has reached the same conclusion in applying Ohio's identical version of Rule 9(b)).

### 1.    Actual intent

Actual intent fraudulent claims require that the creditor show: "(1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors." *Guernsey Cnty. Cmty. Dev. Corp. v. Speedy*, 2023 WL 3719798, *6 (Ohio Ct. App. May 30, 2023) (citing *Swank v. Swank*, 2008 WL 3133755 (Ohio Ct. App. Aug. 5, 2008)).  Because proof of actual intent may be impossible to show, the second element may be met by a showing of "badges of fraud." *Blood v. Nofzinger*, 834 N.E.2d 358, 368. A nonexhaustive list of examples of badges of fraud can be found in Ohio Revised Code § 1336.04(B).[1]  "While the existence of one or more of the badges does

---

[1]The badges of fraud listed in Ohio Revised Code § 1336.04(B) are:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the

10

not constitute fraud *per se*, a complaining party is not required to demonstrate the presence of all badges of fraud." *Guernsey Cnty.*, 2023 WL 3719798, *6.  As few as three badges have been found to show actual fraudulent intent. *Id.*

The badges of fraud alleged in a complaint must be based on more than just inferences. *Pres. Partners, Inc. v. Sawmill Park Props., LLC*, No. 2:22-cv-477, 2022 U.S. Dist. LEXIS 173123, *7 (S.D. Ohio Sep. 23, 2022). In addition, to satisfy the requirements of Rule 9(b), a plaintiff alleging actual intent must also show in their complaint who was involved in the alleged fraud, what was transferred, and where and how the alleged fraud took place. *Id.* at *6.  However, as one district court has explained:

> "an exception to the Rule 9(b) particularity requirement exists when the relevant facts 'lie exclusively within the knowledge and control of the opposing party.'" *Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC*, 412 F. Supp. 2d 872, 878 (W.D. Tenn. 2006) (quoting *Wilkins ex rel. United States v. State of Ohio*, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995)).  "In such a case, pleading upon information and belief is permissible," but the plaintiff "must still plead a statement of facts upon which the belief is based." *Id.* (citing *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.

---

debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Ohio Rev. Code § 1336.04.

1990)).  Moreover, "[a] court should hesitate to dismiss an action when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted." *Id*. (citing Michaels Bldg. Co., 848 F.2d at 680)).

*Lindsey v. Collier*, No. 2:20-CV-00062, 2021 WL 3666906, at *6 (M.D. Tenn. Aug. 18, 2021).

Here, Plaintiff alleges two badges of fraud to prove Defendant's actual intent: (i) the transfer was concealed; and (ii) the consideration received by Obligors from Defendant was not reasonably equivalent to the value of the receivables.  (Doc. 18, PAGEID 1405). These badges coincide with Ohio Revised Code §§ 1336.04(B)(3) and (8) respectively.

To support the first badge—that the transfer was concealed—Plaintiff points to paragraphs 30-32 of their Amended Complaint.  (Doc. 12).  These paragraphs allege that Plaintiff did not know about the Factoring Agreements between Defendant and Obligors; Obligors did not inform Plaintiff of the Factoring Agreements (in violation of the Security Agreement); and Defendant did not file any UCC-1 Financing Statements.  These paragraphs are properly plead based on information and belief because the facts needed to prove them are known only to the Defendant. Specifically, only Defendant and Obligors had access to the Factoring Agreements. Plaintiff's information and belief are based on the facts that they do have: that Obligors and Defendant had some sort of agreement where Obligors sold and/or pledged the Receivables and/or the Withdrawals to Defendant and these agreements were not disclosed to Plaintiff.

To support the second badge—that consideration received by Obligors from Defendant was not reasonably equivalent to the value of the Receivables transferred—Plaintiff points to paragraph 56 of the Amended Complaint (Doc. 12) as well as Exhibit Q

12

to the Amended Complaint (Doc. 12-17), which are bank records showing payments and withdraws.  Plaintiff alleges that Defendant deposited $17,832.22 with Wexford Care, but withdrew $588,463.26.  (Doc. 12, ¶ 56; see also Doc. 12-17, PageID 1171). Plaintiff believes that, based on this transfer, Obligors did not receive a reasonably equivalent value in exchange for the transfer of the Receivables and/or the Withdrawals to Defendant.

The Court finds that Plaintiff's Amended Complaint contains sufficient factual allegations to support these two badges of fraud.

Defendant also argues that Plaintiff has not alleged a "transfer" under Ohio Revised Code § 1336.04(A)(1).  Defendant maintains that once the Obligors' accounts receivables were assigned to it by way of the Factoring Agreements, any collection of the accounts receivables by Defendant were a transfer of its own interest and not an interest of the Obligors.

"Transfer" is broadly defined in Ohio's Uniform Fraudulent Transfers Act as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  Ohio Rev. Code § 1336.01(L).  Moreover, Ohio Revised Code § 1302.44(B)(1) provides: "A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien."  Plaintiff alleges that Defendant took any collateral subject to Plaintiff's security interest.  However, as this Court previously explained, Ohio Revised Code § 1309.332(B) permits Defendant to take the funds free of Plaintiff's

13

security interest absent collusion.  (Doc. 10, PAGEID 856) (citing *Cortland Sav. & Banking Co. v. Platinum Rapid Funding Grp., Ltd*., 182 N.E.3d 1259, 1263 (Ohio Ct. App. Dec. 30, 2021).  As discussed above, Plaintiff has adequately plead collusion for purposes of Ohio Revised Code § 1309.332.

Therefore, the Court concludes that Plaintiff's Amended Complaint states a claim for actual fraudulent transfer under Ohio Revised Code § 1336.04(A)(1).

### 2.    Constructive intent

Constructive fraud can exist when the debtor had no actual intent to commit fraud. *Blood v. Nofzinger*, 2005-Ohio-3859, ¶ 52, 162 Ohio App. 3d 545, 560, 834 N.E.2d 358, 369 (citing *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d at 667, 729 N.E.2d 768 (Ohio Ct. App. 1999)). Pursuant to Ohio Revised Code § 1336.04(A)(2), constructive intent for fraud can be shown if the debtor made the transfer without receiving a reasonable equivalent value in exchange and if either:

> (a) the debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>
> (b) the debtor intended to incur or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Ohio Rev. Code §§ 1336.04(A)(2)(a) and (b).  For a transfer to have a reasonable equivalent value, the debtor must receive a direct or indirect economic benefit; and "the value received must be tangible; non-economic, intangible, or psychological benefits are insufficient to constitute reasonably equivalent value for constructive fraud purposes." *Guernsey Cnty.*, 2023 WL 3719798, *8 (quoting *In re Hrivnak*, N.D. Ohio No. 16-15564, 2018 WL 1115204 (Feb. 27, 2018)). Courts compare the value of what was transferred

14

and the value of what was received to determine if the transfer was of reasonably equivalent value.  *Id.*  "Whether consideration supporting a challenged transfer is reasonable must be determined from the standpoint of the debtor. *In re Grove-Merritt*, 406 B.R. 778, 805 (Bankr. S.D. Ohio 2009) (citing *Aristocrat Lakewood Nursing Home*, 729 N.E.2d at 777-78).

Plaintiff alleges that the transfer did not have a reasonably equivalent value because the Obligors received $17,832.22 from Defendant, but Defendant withdrew $588,463.26.  (Doc. 12, ¶ 56).  Plaintiff also alleges that the Obligors were engaged in a check kiting scheme, which demonstrates that they intended to incur debts beyond their ability to pay as they came due.  (Doc. 12, ¶ 57).

Therefore, the Court concludes that Plaintiff's Amended Complaint states a claim for constructive fraudulent transfer under Ohio Revised Code § 1336.04(A)(2).

## III. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16) is **DENIED**.

**IT IS SO ORDERED.**

_____*/s/ Michael R. Barrett*_____
Michael R. Barrett
United States District Judge

15